**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HUGH GAUGHAN and** | ) | **CASE NO.  1:05 CV 180** |
| **THOMAS RADDELL,** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| **Plaintiffs,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **vs.** | ) | **AND ORDER** |
| | ) | |
| **CITY OF CLEVELAND, OHIO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is Defendant the City of Cleveland's Motion to Dismiss

("Motion") **(ECF No. 5).**  This case challenges the constitutionality of two Cleveland ordinances

regulating the playing of sound devices.  For the following reasons, the Motion is **GRANTED.**

## I.  BACKGROUND

### A.  City of Cleveland sound device ordinances

At issue in this case are § 683.01 and § 605.10 of the Cleveland, Ohio, Charter &

Codified Ordinances ("C.C.O.").  Section 683.01 provides as follows:

## § 683.01.  PLAYING OF SOUND DEVICES PROHIBITED; WHEN

(a) No person shall play any radio, music player, television, audio system or musical instrument in such a manner or at such volume as to annoy or disturb the quiet, comfort or repose of neighboring inhabitants or at a volume which is plainly audible to persons other than those who are in the room in which such device or instrument is played and who are voluntary listeners thereto.

(b) Except for organized events which have received any type of permit from the City in conjunction with the event, no person shall play any radio, music player, television or audio system upon a public right of way or upon other public property in such a manner or at such a volume as to disturb the quiet, comfort or repose of other persons.

Section 683.99 of the Cleveland Code sets forth the penalties for violating the afore-quoted ordinance.[1]

---

[1]That provision states, in pertinent part, as follows:

(a) Whoever violates any of the provisions of this chapter shall be guilty of a misdemeanor and, upon a first offense, shall be fined seventy-five dollars ($75.00), which fine shall not be suspended, waived or otherwise reduced below that amount.  In addition, the equipment or device used in the commission of a violation of Section 683.01 or 683.02 is hereby declared to be contraband and shall be seized and disposed of in accordance with RC 2933.43.

(b) In addition to any other method of enforcement provided for in this chapter, upon a first offense Section 683.01 may be enforced by the issuance of a citation in compliance with Rule 4.1 of the Ohio Rules of Criminal Procedure, and Section 683.02 may be enforced by the issuance of an Ohio Uniform Traffic Ticket in compliance with the "Ohio Traffic Rules" promulgated by the Ohio Supreme Court pursuant to RC 2935.17 and 2937.46.

(c) whoever violates Section 683.01 or 683.02 within thirty-six (36) hours of having been charged with a first offense thereof or within thirty-six (36) hours of having been warned by a police officer to desist from violating one of those sections shall be guilty of a misdemeanor of the third degree.

The second ordinance challenged in the instant action is C.C.O. § 605.10.  That ordinance provides, in pertinent part, as follows:

§ 605.10.  UNNECESSARY NOISE

(a) No person shall make, or cause, suffer, allow, or permit to be made within the City any unreasonably loud, disturbing and unnecessary noise, or noises of such character, intensity or duration as to be detrimental to the life and health of any individual.

(b) Loud, disturbing and unnecessary noises in violation of this section shall include without limitation the following:

. . . .

(9) The making of any loud, unseemly or unnecessary noise in violation of Chapter 683 of these Codified Ordinances.

C.C.O. § 605.10(d) sets forth the penalties for violating this provision.[2]

_____

. . . .

(e) Each day upon which a violation occurs or continues shall be a separate offense and punishable as such hereunder.

C.C.O. § 683.99.

[2]That section provides as follows:

Whoever violates this section is guilty of making unnecessary noise, a minor misdemeanor, and shall be fined at least seventy-five dollars ($75.00), which fine shall not be suspended, waived or otherwise reduced below that amount. Whoever violates this section within twelve (12) hours of having been charged with the minor misdemeanor of making unnecessary noise or of having been warned by a police officer to desist from making unnecessary noise is guilty of making unnecessary noise, a misdemeanor of the third degree, and shall be fined at least one hundred dollars ($100.00), which fine shall not be suspended, waived, or otherwise reduced below that amount. Notwithstanding

### B. Facts[3]

Plaintiffs Hugh Gaughan and Thomas Raddell are anti-abortion activists who have engaged in protests at abortion clinics in the City of Cleveland.  In January 2003, Plaintiffs obtained an audio recording of a 911 call pursuant to a public records request.  The 911 call was made from the Center for Women's Health, an abortion clinic located at 11710 Shaker Boulevard in Cleveland, Ohio.  The call concerned a request for emergency medical assistance for a woman who had just received an abortion from Martin Ruddock, an individual who owns and operates the clinic.  During the 911 call, Ruddock stated as follows:

> She's stable, she's fine.  She's an obese young lady, 30 years old.  I did a second trimester abortion.  She has a laceration on the cervix, at 3:00 on the cervix.  I . . . stitched [it] and she has vaginal packing.  She's stable.  I just can't stop the bleeding.  I can't see what I'm doing and I want her out of here.

Plaintiffs regularly engaged in protests at the Shaker Boulevard abortion clinic.  During many of these protests, particularly when women were entering the clinic to procure an abortion or abortion-related services, Plaintiffs played the 911 audio recording on an audio cassette player in the hopes "that it w[ould] educate the women as to the life-threatening dangers inherently associated with abortion."

---

the preceding provisions of this paragraph, the penalties contained in Section 683.99 shall apply to violations of division (b)(9) of this section.

C.C.O. § 605.10(d).

[3]All facts are taken from the Amended Complaint.  For purposes of the motion to dismiss, these facts are recounted in a light most favorable to Plaintiffs and are accepted as true.  *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 762 (6th Cir. 2005).

On December 27, 2003, Plaintiff Hugh Gaughan ("Gaughan") played the 911 recording on an audio cassette player while standing near the rear of the abortion clinic. On January 23, 2004, Susan Noble, an employee of the abortion clinic, filed a complaint against Gaughan. The complaint alleged that on December 27, 2003, Gaughan engaged in acts that constituted a violation of C.C.O. § 683.01(a) and Ohio Revised Code § 2911.21(A)(1), (2) (criminal trespass).[4]

The Amended Complaint alleges that "Noble's complaint against Gaughan was motivated by her displeasure and disagreement with the content of the 911 audio recording (and the pro-life viewpoint of Gaughan's speech)." As a result of Noble's complaint, a warrant was issued for Gaughan's arrest.

On January 24, 2004, Gaughan was playing the 911 audio recording while standing near the rear of the abortion clinic. While he was playing the recording, Cleveland police officers arrested him pursuant to the warrant. Gaughan eventually pled no contest to the trespass charge and paid a $75 fine. The City dismissed the charge for violating § 683.01(a).

After his arrest, Gaughan continued to play the 911 audio recording on numerous occasions during the regularly scheduled protests at the clinic. On each such occasion,

---

[4]Section 2911.21 of the Ohio Revised Code reads, in pertinent part, as follows:

(A) No person, without privilege to do so, shall do any of the following:

(1) Knowingly enter or remain on the land or premises of another;

(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard[.]

-5-

uniformed City police officers were present in the vicinity of the abortion clinic and aware that Gaughan was playing the 911 audio recording, but did not arrest or issue a citation to him for violating § 683.01.

    For instance, on November 13, 2004, Gaughan played the 911 audio recording while standing on a public sidewalk across the street from the rear of the abortion clinic.  Police officers informed him that "neighboring inhabitants" who lived behind the abortion clinic had complained about his playing of the 911 tape.  The officers, however, did not arrest Gaughan for violating § 683.01 based on these complaints.

    After local police informed him about the neighbors' complaints, Gaughan moved to the front of the abortion clinic onto a public sidewalk where several other protestors were assembled, and played the 911 tape.  The officers then informed Gaughan that the 911 audio recording could be heard inside the abortion clinic, and gave him a citation for violating § 683.01.  The citation stated:

> While at the above address [11710 Shaker Blvd.] [sic] did play an audio system in such a manner or at such a volume as to annoy or disturb the quiet, comfort or repose of neighboring inhabitants.

On the day of trial, the prosecution presented no witnesses and the charge was dismissed.   Since November 13, 2004, neither Gaughan nor Raddell has played the 911 audio recording at the Shaker Boulevard abortion clinic.

## C.  Procedural History

On February 2, 2005, Plaintiffs filed a Complaint for declaratory, injunctive and monetary relief[5] against Defendant the City of Cleveland ("the City"), and a Motion for Preliminary Injunction to enjoin enforcement of the City's sound device and noise ordinances on the grounds that they violate Plaintiffs' free speech and due process rights under the First and Fourteenth Amendments to the U.S. Constitution.  *ECF Nos. 1, 3.*

Gaughan alleges that the City enforced § 683.01(a) against him on two occasions based on the content and/or viewpoint of his speech.[6]  The City's enforcement of § 683.01(a) was selective and discriminatory, argues Gaughan, because the ordinance was enforced only upon the request or complaint of an employee or agent of the abortion clinic.  In addition to the as-applied challenge,[7] both Plaintiffs challenge the facial validity of § 683.01(a).  Finally, Plaintiffs challenge the facial validity of two related Cleveland ordinances – § 683.01(b) and § 605.10(b)(9) – but do not urge that either provision was applied to them.  *See ECF No. 4, Pls.' Mem. Supp. Prelim. Inj.,* ("Mem. Supp. Prelim. Inj."), at 6 n.3 (stating that the as-applied challenge is limited to the first clause of § 683.01(a)).

---

[5]Plaintiffs' claim for monetary relief requests an award of nominal damages in the amount of $1 per Plaintiff, and an award of costs and expenses incurred in bringing this action, including attorneys' fees.

[6]There is no allegation that § 683.01(a), or any of the ordinances challenged herein, was enforced against Raddell.

[7]Plaintiffs refer to Gaughan's as-applied challenge as though they are both raising it. However, Plaintiffs do not establish that Raddell has standing to challenge § 683.01(a) as it was applied to Gaughan.  Accordingly, the Court will refer to the as-applied claims as Gaughan's claims.

Plaintiffs allege that they desire to play the 911 audio recording on public property or on the public right of way near the abortion clinic, but have refrained from doing so due to the City's unconstitutional Sound Device Ordinances,[8] the unconstitutional manner in which § 683.01(a) has been applied against Gaughan, and for fear of being arrested and prosecuted by the City for violating the ordinances.

The City filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Sound Device Ordinances are facially valid and that Gaughan's as-applied challenge to § 683.01(a) fails to state a claim upon which relief can be granted.  *ECF No. 5*.  Plaintiffs filed an opposition to the Motion, *ECF No. 9,* ("Response"), as well as an amended complaint, *ECF No. 8,* ("Amended Compl.").  The following day, a telephone conference was held with counsel for both parties.  During that discussion, the Court set forth a briefing schedule and permitted the City to respond to any new allegations articulated in the amended complaint in its reply brief.  *ECF No. 12,* at 1.  The parties timely filed their reply briefs, *ECF Nos. 13,* ("Reply"), *14* ("Sur-Reply"), and the case is now ripe for adjudication.

## II.  LAW

In determining whether a complaint states a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint liberally in a light most favorable to the non-moving party, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998), and accept as true the factual allegations contained in the pleading.  *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  "While dismissal for failure to state a claim is disfavored, *Conley v. Gibson*, 355 U.S. 41,

---

[8]Plaintiffs employ the term "Sound Device Ordinances" to refer to Sections 683.01, 683.99, and 605.10(a), (b)(9), and (d) collectively.

-8-

45-46 (1957), the requirement that the court liberally construe a claim when considering a Rule 12(b)(6) dismissal 'does not relieve a plaintiff of his obligation to . . . allege more than bare assertions of legal conclusions.'" *Harris v. American Postal Workers Union,* No. 98-1734, 1999 WL 993882, at *4 (6th Cir. Oct. 19, 1999) (quoting *Lewis v. ACB Bus. Serv. Inc.,* 135 F.3d 389, 406 (6th Cir. 1998)).  In considering a Rule 12(b)(6) motion, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action.  *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).  A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.  *Weiner,* 108 F.3d at 87-88 (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Bloch*, 156 F.3d at 677 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### III.  ANALYSIS

#### A.  Mootness Challenge

Plaintiffs ask the Court to deny the City's Motion to Dismiss as moot because the motion was filed before the Amended Complaint and was never renewed subsequent to that filing.  *Response,* at 2; *Sur-Reply,* at 3 n.2.  In making this claim, Plaintiffs ignore the Court's July 22, 2005 Order.  *ECF No. 12*.  In that Order, the Court set forth a briefing schedule in which it specifically permitted the City to respond to "any new allegations in [P]laintiff[ ]s['] amended complaint" in its reply brief.  *Id*. at 1.  The City followed the Court's instruction in lieu of filing

a renewed motion.  *Reply,* at 1.  Accordingly, the Court will not deny as moot the City's Motion to Dismiss.

### B.  Vagueness Challenge

Next, Plaintiffs challenge the facial validity of §§ 683.01 and 605.10(b)(9) under the vagueness doctrine.[9]  Gaughan also argues that the first clause of § 683.01(a) is unconstitutionally vague as applied to him.

> A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement. *Chicago v. Morales,* 527 U.S. 41, 56-57, 119 S. Ct. 1849, 144 L.Ed.2d 67 (1999).

*Hill v. Colorado,* 530 U.S. 703, 732 (2000).  In addressing Plaintiffs' facial vagueness challenge, this Court must first determine whether the ordinances reach a substantial amount of constitutionally protected conduct.  *City of Houston v. Hill,* 482 U.S. 451, 458 (1987).  To determine the scope of the Sound Device Ordinances, the Court must defer to any narrowing construction given to the ordinances by a state court.  *See Shuttlesworth v. City of Birmingham,* 382 U.S. 87, 91 (1965); *City of Chicago v. Morales,* 527 U.S. 41, 61 (1999).

In *City of Cleveland v. Vento*, No. 79913, 2002 WL 1041747, at *1 (Ohio Ct. App. May 23, 2002), the Ohio Court of Appeals gave a reasonableness construction to § 683.01(b).  In *Vento,* the City appealed from the trial court's dismissal of a complaint against a defendant for using an amplified sound system without a permit in violation of § 683.01(b).  In dismissing the complaint, the trial court declared § 683.01(b) unconstitutionally vague and

---

[9]The Court assumes, without deciding, that Plaintiffs have standing to challenge §§ 683.01(b), 605.10(b)(9) and the second clause of § 683.01(a) as unconstitutionally vague.

overbroad.  *Id*.  The Ohio Court of Appeals reversed.  *Id*.  The court of appeals identified its obligation to give a reasonable construction to an ordinance that is challenged on vagueness grounds.  *Id*. at *3.  The state court compared the Cleveland ordinance to a similarly-worded Cincinnati ordinance which survived a vagueness challenge in *State v. Dorso*, 446 N.E.2d 449 (Ohio 1983).  *Id*. at *3-4.  The Cincinnati "Loud Musical Noises" ordinance prohibits, *inter alia*, playing music or amplifying sound "in such manner as to disturb the peace and quiet of the neighborhood . . . ."[10]  *Dorso*, 446 N.E.2d at 450.  In *Dorso*, the defendant claimed that the phrase "to disturb the peace and quiet" was impermissibly vague because it established "no objective measure for gauging what 'disturbs.'"  *Id*. at 452.  The *Dorso* court rejected this argument and gave a limiting construction to the ordinance:

> [W]e construe the Cincinnati ordinance at issue to prohibit the playing of music, amplification of sound, etc., in a manner which could be anticipated to offend the reasonable person, *i.e.,* the individual of common sensibilities. Specifically, we find the ordinance to proscribe the transmission of sounds which disrupt the reasonable conduct of basic human activities, *e.g.,* conversation

---

[10]The "Loud Musical Noises" ordinance provides, in pertinent part, as follows:

> No person, association, firm or corporation, operating a restaurant, hotel, summer garden or other place of refreshment or entertainment, shall permit, nor shall any person in or about such restaurant, hotel, summer garden or other place of refreshment or entertainment engage in the playing or rendition of music of any kind, singing, loud talking, amplification of sound, or other noises on or about the premises, in such manner as to disturb the peace and quiet of the neighborhood, having due regard for the proximity of places of residence, hospitals or other residential institutions and to any other conditions affected by such noises.

Cincinnati Municipal Code, § 910-9.

Although the ordinance applies to places of refreshment or entertainment, including hotels and restaurants, the Ohio Supreme Court did not place any significance on these specific venues in reaching its decision.

> or sleep. Our construction of the ordinance does not permit the
> imposition of criminal liability upon a party whose conduct
> disturbs only the hypersensitive. Thus, the standard hereby adopted
> vitiates the claimed vagueness of the ordinance.

*Id.*  The *Vento* court applied this reasonableness construction to § 683.01(b) and concluded that "C.C.O. 683.01 permits a person of ordinary intelligence fair notice of the proscribed conduct." *Vento*, at *4.

Plaintiffs argue that the court of appeals "re-wrote" a portion of § 683.01(b) to add a reasonableness requirement, and ask the Court to "pay little heed" to its "analytically anorexic" ruling. *Sur-Reply,* at 3; *Response*, at 8, 10.  Plaintiffs' argument is not well-taken. This Court is bound to accept the Ohio Court of Appeals' narrowing construction of § 683.01(b). *See Shuttlesworth,* 382 U.S. at 91 (discussing the Court's duty to accept the Alabama Court of Appeals' limiting construction of a City of Birmingham ordinance); *Morales,* 527 U.S. at 61 (quoting *Smiley v. Kansas,* 196 U.S. 447, 455 (1905)) ("The power to determine the meaning of a statute carries with it the power to prescribe its extent and limitations as well as the method by which they shall be determined.").

Next, Plaintiffs argue that *Vento* cannot be read to declare § 683.01(a) facially valid because the court of appeals was not presented with a challenge to subsection (a), and did not construe that subsection of the ordinance. *Response,* at 6, 8.  Plaintiffs also claim that *Vento*'s narrowing construction was applied only to the phrase "disturb the quiet, comfort or repose of other persons," and not to the remaining language of § 683.01(b). *Sur-Reply,* at 3. Finally, Plaintiffs contend that their constitutional arguments are more expansive than those presented in *Vento*. *Id.* at 10.  There, the defendant challenged § 683.01(b) solely on the grounds that the ordinance did not define the prohibited noise level. *Vento,* at *3 ("Vento argues that,

-12-

absent a decibel limit or some other objective measure of disturbance, the statute leaves one to wonder: how loud is too loud?").  For the following reasons, the Court rejects the limitations Plaintiffs would apply to *Vento*, and finds that § 683.01 in its entirety is susceptible to the reasonableness standard adopted by the Ohio Supreme Court in *Dorso*.

Plaintiffs contend that § 683.01(a) is void for vagueness.  Specifically, they argue that the term "annoy" is unconstitutionally vague and its imprecision is not salvaged by a state court narrowing construction.  *Response,* at 6-7.  In support of this argument, Plaintiffs refer the Court to *Coates v. City of Cincinnati,* 402 U.S. 611 (1971).[11]  *Response,* at 6-7.  In *Coates,* the U.S. Supreme Court declared unconstitutional a city ordinance that made it a crime for "three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks . . . and there conduct themselves in a manner annoying to persons passing by . . . ."  402 U.S. at 611 n.1.  The U.S. Supreme Court found that the lower court (the Supreme Court of Ohio) did not give a limiting construction to the ordinance, but simply stated that the term "annoying" is widely used and well-understood.  *Id.* at 612.  The Court found that the only construction placed upon the ordinance by the Ohio Supreme Court was the

> unexplained conclusion that 'the standard of conduct which it specifies is not dependent upon each complainant's sensitivity.' But the court did not indicate upon whose sensitivity a violation does depend – the sensitivity of the judge or jury, the

---

[11]Plaintiffs also draw the Court's attention to *Saia v. New York,* 334 U.S. 558 (1948). *Saia* is distinguishable. There, the U.S. Supreme Court invalidated a portion of a city ordinance which prohibited the use of sound amplification devices except with the permission of the Chief of Police. *Id.* at 558-59. The Court held that the ordinance created a prior restraint on free speech and did not articulate any standards for the exercise of the police chief's discretion. *Id.* at 559-60. Here, there is no allegation that the Sound Device Ordinances establish a prior restraint on the right of free speech. Furthermore, unlike the ordinance in *Saia,* the Sound Device Ordinances are narrowly drawn and do not invite the content-based censorship of ideas. *See infra* Parts C-D.

> sensitivity of the arresting officer, or the sensitivity of a
> hypothetical reasonable man.

*Id.* at 613 (citation omitted).  Immediately following this statement, the Court discussed its decision in *Chaplinksy v. New Hampshire*, 315 U.S. 568 (1942), where it upheld a statute that prohibited directing "offensive, derisive or annoying" words to another person.  *See Coates,* 402 U.S. at 613 n.3.  The *Coates* Court indicated that its decision to uphold the statute in *Chaplinsky* was based on the limiting construction given to the statute by the New Hampshire Supreme Court.  *Id.*; *Chaplinsky,* 315 U.S. at 573.  The New Hampshire court held that the words "offensive, derisive or annoying" were not defined in terms of what a particular addressee thought; rather, the test was what men of common intelligence would understand as "fighting words."  *State v. Chaplinsky,* 18 A.2d 754, 762 (N.H. 1941).  In *Coates*, however, the U.S. Supreme Court was left without a limiting construction from the court below.  Forced to resort to the plain language of the ordinance, the *Coates* Court concluded that the ordinance was unconstitutionally vague because it "subjects the exercise of the right of assembly to an unascertainable standard . . . ."  402 U.S. at 614.  Even in *Dorso*, argue Plaintiffs, the Ohio Supreme Court specifically concluded that the decision to invalidate the ordinance in *Coates* was premised on the "state court's failure to interpret the word 'annoying' in a fashion that endowed it with the requisite specificity."  *Response,* at 7; *Dorso,* 446 N.E.2d at 452.

Although Plaintiffs correctly note that *Vento* does not address, let alone elaborate on the meaning of § 683.01(a), this Court is not confined to the words of the ordinance to determine its facial validity.  In *Grayned v. City of Rockford,* 408 U.S. 104, 106 (1972), the U.S. Supreme Court addressed the constitutionality of an anti-noise ordinance enacted by the City of Rockford, Illinois.  In that case, approximately 200 demonstrators engaged in a public protest

-14-

next to a high school while the school was in session.  *Id*. at 105.  Grayned was tried and convicted of violating two Rockford ordinances, including the anti-noise ordinance.  *Id*. at 106. He appealed directly to the Supreme Court of Illinois on the grounds that the ordinances were unconstitutional on their face.  *Id*.  The Illinois Supreme Court affirmed the convictions and Grayned appealed to the U.S. Supreme Court.  *Id*.  The Supreme Court affirmed in part, holding that the anti-noise ordinance was not unconstitutionally vague or overbroad.  *Id*. at 106, 108.

In *Grayned,* the Court found that the state supreme court did not elaborate on the meaning of the Rockford ordinance.  *Id*. at 109-110.  Despite the absence of any limiting construction by the state court, the Court indicated that it was not "left with just the words of the ordinance . . . ."  *Id*. at 111.  The Court stated that it could refer to the interpretations the state supreme court had given to analogous statutes.  *Id*. at 109-110.  The Court looked to other Illinois Supreme Court decisions (specifically, *City of Chicago v. Meyer,* 253 N.E.2d 400 (Ill. 1969), and *City of Chicago v. Gregory*, 233 N.E.2d 422 (Ill. 1968)) which gave a limiting construction to a similarly-worded Chicago ordinance.  *Id*. at 111.  Because *Meyer* was cited in the opinion below and *Meyer* drew heavily on *Gregory,* the Court concluded that the state supreme court would give the Rockford ordinance a similar narrowing construction.  *Id*. at 111-12.

Following the precedent in *Grayned,* this Court finds that its analysis of § 683.01(a) is not confined to the mere words of that provision.  The first clause of § 683.01(a) is strikingly similar to § 683.01(b).  In rejecting the claimed vagueness of § 683.01(b), the *Vento* court drew heavily on *Dorso*.  *See Vento,* at *3-4.  In *Dorso*, the Ohio Supreme Court concluded that a violation of the Cincinnati "Loud Musical Noises" ordinance depends upon the sensitivity

-15-

of a hypothetical reasonable person.  *Dorso,* 446 N.E.2d at 452 ("criminal liability [does not attach to] a party whose conduct disturbs only the hypersensitive").  Accordingly, the Court concludes that the Ohio Supreme Court would interpret the first clause of § 683.01(a) to prohibit only the playing of a sound device in a manner or at a volume "which could be anticipated to offend the reasonable person."  Specifically, the Court finds that the Ohio Supreme Court would construe the first clause of § 683.01(a) "to proscribe the transmission of sounds which disrupt the reasonable conduct of basic human activities."

Contrary to Plaintiffs' assertions, *see Sur-Reply,* at 4, the term "annoy" in subsection (a) *is* susceptible to *Dorso's* reasonableness standard.  The term "annoy" is not to be understood in subjective terms.  Rather, the measure for determining whether the playing of a sound device "annoy[s]" (or disturbs) a neighboring inhabitant is whether that conduct *disrupts* the tranquillity or repose of a reasonable person.  *See also Hill v. Colorado,* 530 U.S. 703, 716 (2000) (stating that the unwilling listener's interest in avoiding unwanted communication is an aspect of the broader "right to be let alone.").

It is important to note that the constitutional vice in *Coates* rested partly on the ordinance's unqualified use of the term "annoying."  *See Robinson v. Township of Waterford*, No. 84-1579, 1989 WL 94569, at *4 (6th Cir. Aug. 18, 1989) (stating that the *Coates* ordinance was struck down on vagueness grounds because "the word 'annoy' was the only word used to define or limit the offense").  The ordinance in *Coates* failed to provide individuals with any ascertainable standard to determine whether their conduct would "annoy" passers-by.  Here, the very language of § 683.01(a) reveals that the term "annoy" is not unqualified.  Rather, the City of Cleveland has limited the reach of § 683.01(a) by prohibiting the playing of a sound device in

-16-

a manner or at a level that would "annoy . . . the quiet, comfort or repose of neighboring inhabitants."  The prohibition clearly limits the protected class of persons to neighboring inhabitants; furthermore, the ordinance does not proscribe conduct that is generally "annoying" to neighbors, but limits criminal liability to conduct that annoys "the quiet, comfort or repose" of neighbors.  Therefore, the vagueness of the term "annoy" is dispelled, not only by the reasonableness construction articulated in *Dorso*, but also by the ordinance's requirement that there be demonstrated interference with a neighboring inhabitant's tranquillity or repose.  *See Grayned*, 408 U.S. at 113-14.  With these limitations, the Court rejects Plaintiffs' argument that the term "annoy" is impermissibly vague, and finds that the first clause of § 683.01(a) gives persons of ordinary intelligence fair notice of the prohibited conduct.

For the same reasons, Plaintiffs' fear of arbitrary and discriminatory enforcement is without merit.  "As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible."  *Id*. at 114.  *See also Horton v. City of St. Augustine,* 272 F.3d 1318, 1330 (11th Cir. 2001).

The second clause of § 683.01(a) prohibits persons from playing certain sound devices "at a volume which is plainly audible to persons other than those who are in the room in which such device or instrument is played and who are voluntary listeners thereto."  Plaintiffs would have the Court interpret this clause as prohibiting the playing of a sound device in any room at a volume that is plainly audible to (a) an involuntary listener (whether that listener be inside or outside the room); or (b) a *voluntary* listener who is not in the room.  *Mem. Supp. Prelim. Inj.,* at 3.  Plaintiffs essentially propose "hypertechnical theories as to what the statute covers."  *Hill v. Colorado,* 530 U.S. 703, 733 (2000).  In *Hill,* the petitioners presented the Court

with hypothetical situations in an effort to persuade the Court of the claimed vagueness of a state statute. *Id*. at 732-33.  The Court rejected these arguments:

> [W]hile "[t]here is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question," because we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language[.]" . . . We thus conclude that "it is clear what the ordinance as a whole prohibits." More importantly, speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid "in the vast majority of its intended applications[.]"

*Id.* at 733 (citations omitted).  Here, Plaintiffs urge a technical interpretation of a statute whose prohibitory reach is plainly understood.  Accordingly, the second clause of § 683.01(a) is not void for vagueness.

Plaintiffs also contend that *Dorso's* narrowing construction applies only to *a portion* of § 683.01(b).  *Sur-Reply,* at 3.  Plaintiffs concede that the term "volume" is susceptible to the narrowing construction, *Response*, at 8 n.9; *Vento,* at *4 (applying *Dorso's* reasonable person standard as the appropriate measure for determining at what volume the playing of a sound device becomes a criminal offense), as well as the phrase "disturb the quiet, comfort or repose of other persons."  *Response,* at 8 n.9; *Sur-Reply,* at 3.  Moreover, there is no contention that the first clause of subsection (b) (concerning the receipt of a permit) is unconstitutional.  Accordingly, Plaintiffs' objection to the "remaining phrases" in subsection (b), *see Sur-Reply,* at 3, presumably focuses on the phrase "in such a manner."  *See Response,* at 8, n.9.  This challenge is unavailing.  The Ohio Supreme Court in *Dorso* interpreted this phrase in the context of the reasonableness construction discussed above.  446 N.E.2d at 452.  While imagination can conceive of indefinite "manner[s]" in which a sound device can be played, the ordinance as

-18-

confined gives adequate notice of the proscribed activity.  *See Grayned,* 408 U.S. at 110 ("The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' but we think it is clear what the ordinance as a whole prohibits.") (citation omitted); *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989).

   For the foregoing reasons, the Court finds no unconstitutional vagueness in C.C.O. § 683.01(a) or (b).

   The Court will now turn to Gaughan's as-applied challenge.  An as-applied challenge requires the Court to determine whether the statute as applied to the facts of the case violates the First Amendment.  *Singer v. United States,* No. 94-3039, 1994 WL 589562, at *5 (6th Cir. Oct. 24, 1994).  To determine whether the first clause of § 683.01(a) is unconstitutionally vague as applied to the specific facts of this case, the Court must determine whether Gaughan had reasonable and fair notice that his conduct was prohibited by the ordinance.  *Palmer v. City of Euclid,* 402 U.S. 544, 545 (1971); *United States v. Hill,* 167 F.3d 1055, 1063 (6th Cir. 1999).

   The Court finds that § 683.01(a) sufficiently warned Gaughan that his particular conduct was prohibited.  The ordinance clearly informed Gaughan that playing the 911 audio recording would subject him to penalty if it interfered with a neighboring inhabitant's reasonable expectation of quiet and repose.  It is important to note that the ordinance's protection applies to "neighboring inhabitants," a term that encompasses both residential neighbors as well as persons inhabiting nearby commercial buildings.  Furthermore, City officials did not arbitrarily enforce § 683.01(a) against Gaughan.  On both occasions, the officers enforced the ordinance only after

-19-

learning that Gaughan's playing of the audio recording disrupted a neighboring inhabitant's reasonable expectation of privacy.

The last ordinance challenged by Plaintiffs is § 605.10(b)(9).[12]  Plaintiffs argue that this provision employs imprecise language and exposes individuals who wish to engage in expressive speech through the use of a sound device to arbitrary punishment.  *Mem. Supp. Prelim. Inj.,* at 12.  Neither the Ohio Supreme Court nor the Ohio Court of Appeals has addressed a vagueness challenge to § 605.10.  However, this ordinance was addressed by the Cleveland Municipal Court in *City of Cleveland v. Powell,* 584 N.E.2d 1386 (Ohio 1991).  There, the court upheld § 605.10 against a vagueness challenge.  In discussing subsections (a) and (b), the court held that "[t]he general language [of the ordinance] is more than sufficiently modified by the nine sections of examples which describe the types of noise which the law seeks to forbid."  *Id*. at 1389.

Ohio and federal courts have taken into account various factors in adjudicating vagueness challenges to anti-noise ordinances that utilize terms such as "loud," "unseemly," and "unnecessary."  These factors include context and the use of limiting language, *State v. Compher,* Case Nos. 1174-75, 1985 WL 17456, at *1-3 (Ohio Ct. App. Dec. 9, 1985) (distinguishing between limited context legislation and broadly-drafted anti-noise ordinances); *Heard v. Rizzo,* 281 F.Supp 720, 741 (E.D. Pa. 1968) (upholding statute prohibiting "loud, boisterous and unseemly noise"); usage of the terms in day-to-day life, *Kovacs v. Cooper,* 336 U.S. 77, 89 (1949) (finding that the terms "loud and raucous" are commonly understood); and

---

[12]It is unclear whether Plaintiffs are challenging the constitutionality of § 605.10(a). In any event, Plaintiffs do not explain why this provision is unconstitutional. Accordingly, the Court will only address subsection (a) for the limited purpose of analyzing the claimed vagueness of subsection (b)(9).

standards given by the legislature to define the offending conduct, *City of Columbus v. Kendall,* 798 N.E.2d 652, 655 (Ohio Ct. App. Sept. 30, 2003).  *See also Jim Crockett Promotion, Inc. v. City of Charlotte,* 706 F.2d 486, 490 (4th Cir. 1983) (finding term "unnecessary" unconstitutionally vague, but upholding that portion of the ordinance prohibiting "unreasonably loud, disturbing . . . noise").

Section 605.10(a) prohibits "unreasonably loud, disturbing and unnecessary noise."  On its face, the ordinance requires all three elements to be present to constitute the prohibited noise and also incorporates an objective standard of reasonableness.  Section 605.10(b) gives further context to this prohibition by listing nine examples of sounds that fall within the category of "loud, disturbing, and unnecessary noises."  One of these categories is "[t]he making of any loud, unseemly or unnecessary noise in violation of Chapter 683 of these Codified Ordinances."  § 605.10(b)(9).  The requirement that the offender violate Chapter 683 clearly indicates that only certain types of obtrusive noises come within the scope of the prohibition.  Section 605.10(b)(9) only applies to the transmission of sounds which disrupt the tranquillity or repose of a reasonable person or are plainly audible to persons outside the room in which the sound device is played.[13]  Given this context, the Court finds that the phrase "loud, unseemly or unnecessary noise" prohibits the making of noise that is unreasonable under the circumstances.  As confined by this objective standard, the ordinance does not suffer from vagueness.

---

[13]Although C.C.O. § 605.10(b)(9) sweeps within its prohibition the making of any "loud, unseemly or unnecessary noise" that violates any section of Chapter 683, Plaintiffs do not object to any provisions of that chapter beyond § 683.01. Accordingly, this Court will address the facial validity of § 605.10(b)(9) only as it relates to § 683.01.

The phrase "include without limitation" in § 605.10(b) does not alter this Court's ruling. That phrase must be read in the context of the overall law and conveys only that "loud, disturbing and unnecessary noise" is not confined to the examples listed. *Horton,* 272 F.3d at 1330-31.

For the foregoing reasons, the Court finds that the Sound Device Ordinances do not reach a substantial amount of constitutionally protected conduct, but place narrow regulations on speech when that speech can reasonably be found to have interfered with the tranquillity or privacy of an individual of common sensibilities. *See Rendon v. Transp. Sec. Admin.,* 424 F.3d 475, 480 (6th Cir. 2005).

### C. Overbreadth Challenge

Next, Plaintiffs challenge the facial validity of §§ 683.01 and 605.10(b)(9) under the overbreadth doctrine. Gaughan also argues that the first clause of § 683.01(a) is unconstitutionally overbroad as applied to him.

It is well-established that parties raising a facial overbreadth challenge to a statute have standing to assert the rights of third parties not before the court. *Brandywine, Inc. v. City of Richmond,* 359 F.3d 830, 835 (6th Cir. 2004); *Odle v. Decatur County,* 421 F.3d 386, 393 (6th Cir. 2005).

> A[n] . . . enactment may . . . be "overbroad" if in its reach it prohibits constitutionally protected conduct. . . . The crucial question, then, is whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.

*Grayned v. City of Rockford,* 408 U.S. 104, 114-15 (1972) (footnotes omitted). The Sound Device Ordinances undoubtedly place a restriction on speech that is protected by the First

-22-

Amendment.  However, the government may impose reasonable time, place and manner

regulations on protected speech to further significant governmental interests.  *Id*. at 115.

> [E]ven in a public forum the government may impose
> reasonable restrictions on the time, place, or manner of protected
> speech, provided the restrictions "are justified without reference to
> the content of the regulated speech, that they are narrowly tailored
> to serve a significant governmental interest, and that they leave
> open ample alternative channels for communication of the
> information."

*Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) (citation omitted) (holding that the

city's desire to control noise levels to avoid undue intrusion into residential areas is content-

neutral).

The U.S. Supreme Court has held that the government has "a substantial interest

in protecting its citizens from unwelcome noise."  *Id.* at 796 (citation omitted).  This interest is

"by no means" limited to the home.  *Id*.  "[T]he government may act to protect even such

traditional public forums as city streets . . . from excessive noise."  *Id*.

> The principal inquiry in determining content neutrality, in
> speech cases generally and in time, place, or manner cases in
> particular, is whether the government has adopted a regulation of
> speech because of disagreement with the message it conveys.  The
> government's purpose is the controlling consideration. A
> regulation that serves purposes unrelated to the content of
> expression is deemed neutral, even if it has an incidental effect on
> some speakers or messages but not others. Government regulation
> of expressive activity is content neutral so long as it is
> "*justified* without reference to the content of the regulated
> speech."

*Id*. at 791 (citations omitted).

The Sound Device Ordinances regulate excessive and disruptive sound

amplification.  The ordinances "give[ ] no license to punish anyone because of what he is

-23-

saying," *Grayned,* 408 U.S. at 120, and are "justified without reference to the content of the regulated speech."  *See also City of Cleveland v. Vento*, No. 79913, 2002 WL 1041747, at *4 (Ohio Ct. App. May 23, 2002) (stating that § 683.01(b) merely restricts disturbing manners and volumes of speech and does not impinge on the subject matter or content of speech). Accordingly, the City's sound device and anti-noise ordinances are content-neutral.

A time, place or manner restriction need not be the least restrictive means of serving the government's content-neutral interests. *Ward,* 491 U.S. at 798.  Therefore, to determine whether a regulation of the time, place or manner of protected speech is narrowly tailored to advance a significant government interest, the Court is not required to "sift[ ] through all the available or imagined alternative means of regulating [noise] in order to determine whether the city's solution was 'the least intrusive means' of achieving the desired end."  *Id.* at 797.  The narrow-tailoring requirement is met as long as the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation."  *Id.* at 799 (citation omitted).  Still, the regulation cannot burden substantially more speech than is necessary to further the government's interests.  *Id.*

The City's substantial interest in limiting excessive noise and respecting individual privacy and repose is directly and efficiently served by the requirement that a party maintain a modicum of reasonableness when playing a sound device.  *See Ward,* 491 U.S. at 800.  These interests would be served less efficiently absent this regulation.  *Id.*  Finally, the ordinances are not substantially broader than necessary to achieve the City's substantial goals. The ordinances do not ban the use of all sound devices, "but instead focus[ ] on the source of the evils the city seeks to eliminate – excessive and [disruptive] sound amplification – and

-24-

eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.  This is the essence of narrow tailoring." *Id.* at 799 n.7.  *See also Hill,* 530 U.S. at 726.  Accordingly, the Court finds that the Sound Device Ordinances are narrowly tailored to serve a significant governmental interest.  *See also Vento*, at *4-5 (holding that C.C.O. § 683.01(b) is a content-neutral regulation that is narrowly tailored to serve a significant government interest).

The regulations also leave open ample alternative channels of communication. The ordinances continue to permit expressive activity through the use of sound devices, "and ha[ve] no effect on the quantity or content of that expression beyond regulating the extent of amplification."  *See Ward,* 491 U.S. at 802.  Indeed, the regulations do not even attempt to ban entire mediums of communication, but merely place a reasonable restriction on the manner in which parties may convey their messages.  *See id*.  *See also Hill,* 530 U.S. at 731.  The U.S. Supreme Court "ha[s ] regularly rejected the assertion that people who wish 'to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'"  *United States v. Grace,* 461 U.S. 171, 177-178 (1983) (citation omitted).  Accordingly, the ordinances leave open ample alternative channels for communicating information, and "there has been no showing that the remaining avenues of communication are inadequate."  *Ward,* 491 U.S. at 802.  For the foregoing reasons, the Court finds that §§ 683.01(a), (b) and 605.10(b)(9) are not facially overbroad.

"An ordinance which is not overbroad on its face may nevertheless be unconstitutional as applied if it is enforced against a protected activity."  *Felix v. Young,* 536 F.2d 1126, 1134 (6th Cir. 1976).  The City's application of § 683.01(a) against Gaughan was

narrowly tailored to serve a significant government interest.  The officers enforced the ordinance only upon learning that a neighboring inhabitant's reasonable expectation of quiet and repose was disrupted by Gaughan's playing of the audio recording.  The application of the ordinance also left open alternative channels of communication.  Gaughan may continue to play the 911 audio recording (and he concedes that he was permitted to do so on many occasions, *see Am. Compl.* ¶ 23) on a public right of way near the abortion clinic as long as his conduct does not disrupt a neighboring inhabitant's reasonable expectation of privacy.  Accordingly, § 683.01(a), as applied to Gaughan's conduct, did not punish a substantial amount of protected speech in relation to its legitimate sweep.

### D. Viewpoint Discrimination

Gaughan argues that the City's enforcement of § 683.01(a) constitutes a content and/or viewpoint-based regulation of speech because the ordinance was enforced "only upon the request or complaint of an employee or agent of the abortion clinic[.]"  *Am. Compl.* ¶ 37.  The Amended Complaint alleges that the Sound Device Ordinances authorize abortion clinic workers to exercise a heckler's veto to silence unpopular speech, and that the City ratified this veto by enforcing § 683.01(a) only upon the request of a clinic employee.  *Id*. ¶¶ 21, 37.

There are at least three ways of construing Gaughan's viewpoint discrimination claim.  The first approach, adopted by the City, would be to characterize the claim as one of selective enforcement.  The City argues that Gaughan cannot prevail on a selective enforcement claim because he has not alleged that similarly situated individuals escaped prosecution based on

the viewpoint of their speech. *Motion,* at 10; *Reply,* at 6.  Gaughan argues that the instant claim

is not subject to an equal protection analysis.[14]  *Sur-Reply,* at 5.

> To prevail on a claim of selective enforcement, a plaintiff must satisfy a three-

pronged test:

> First, [an official] must single out a person belonging to an
> identifiable group, such as those of a particular race or religion, or
> a group exercising constitutional rights, for prosecution even
> though he has decided not to prosecute persons not belonging to
> that group in similar situations. Second, he must initiate the
> prosecution with a discriminatory purpose. Finally, the prosecution
> must have a discriminatory effect on the *group* which the
> defendant belongs to.

*Cunningham v. Sisk*, No. 03-6640, 136 Fed. Appx. 771, 775 (6th Cir. May 18, 2005) (citing

*United States v. Anderson,* 923 F.2d 450, 453 (6th Cir. 1991)).  With respect to the first prong,

the Sixth Circuit has held that "it is an absolute requirement that the plaintiff make at least a

*prima facie* showing that similarly situated persons outside [his] category were not prosecuted."

*Gardenhire v. Schubert,* 205 F.3d 303, 319 (6th Cir. 2000) (citation omitted).

> The Amended Complaint raises no allegation that Cleveland police decided not to

enforce § 683.01(a) against individuals who either engaged in speech unrelated to abortion or

---

[14]Gaughan relies on *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819 (1995), for this proposition. *See Sur-Reply,* at 6. In *Rosenberger,* the U.S. Supreme Court addressed the scope of the state's authority to restrict speech in a *limited* public forum.  515 U.S. at 829-30. *See also Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384 (1993); *Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106 (2001). Gaughan, however, asserts the right to play the 911 audio recording on a public sidewalk. Public sidewalks are generally considered traditional public fora, *United Food and Commercial Workers Local 1099 v. City of Sydney,* 364 F.3d 738, 747 (6th Cir. 2004), and Gaughan does not dispute this classification, *see Mem. Supp. Prelim. Inj.,* at 5 (asserting the right to play the 911 audio recording in a traditional public forum). Accordingly, Gaughan's viewpoint discrimination claim cannot be governed by the *Rosenberger* line of cases.

expressed a viewpoint on abortion different than the one expressed by Gaughan.  In fact, Gaughan argues that he is not required to raise these allegations.  *See Sur-Reply,* at 5-6.  As Gaughan has not shown that he was singled out for prosecution because he exercised a constitutional right, *see Anderson,* 923 F.2d at 454, he fails to state a claim that the City selectively enforced § 683.01(a).

Gaughan's viewpoint discrimination claim can also be read as imputing the clinic employees' alleged content and/or viewpoint-based disapproval of Gaughan's speech to the Cleveland police.  Even assuming, *arguendo,* that the clinic employees' complaints were based on their disagreement with Gaughan's message, this motive or purpose cannot be transferred to the City.  *See Brazos Valley Coalition for Life, Inc., v. City of Bryan,* 421 F.3d 314, 326 (5th Cir. 2005) (citing *Zelman v. Simmons-Harris,* 536 U.S. 639, 649-53 (2002)).

The Court finds that the viewpoint discrimination claim can be best understood as a claim that the police improperly enforced a heckler's veto.  *See Rosenbaum v. City and County of San Francisco,* No. 00-15147, 8 Fed. Appx. 687, 692 n.1 (9th Cir. Apr. 19, 2001), *remanded to* No. C96-3409 MMC., 2005 WL 1170480 (N.D. Cal. Jan. 12, 2005) ("If the city is employing a 'heckler's veto,' then it is discriminating on the basis of viewpoint, because the hecklers' complaints to the police are alleged to be on the basis of viewpoint."); *Am. Compl.* ¶¶ 17, 27 (alleging that the clinic employees' complaints were based on their disagreement with the content and viewpoint of the 911 audio recording).  This claim is without merit.

Gaughan argues that the City's enforcement of § 683.01(a) was limited to situations where a clinic employee complained.  The facts alleged in the Amended Complaint belie this argument.  In Gaughan's view, the police did not enforce the ordinance when

neighboring residents complained about the "manner in or volume at which" he played the audio recording, but promptly enforced the regulation when clinic employees complained about the "content" of his speech.  *Id*. ¶ 27.  To the contrary, when non-clinic neighbors complained about the playing of the 911 tape, the officers issued a warning to Gaughan which caused him to adjust his conduct.  *Id*. ¶¶ 24-25.  This warning was given by the police in light of complaints that were unrelated to the content or viewpoint of Gaughan's speech.  *Id*. ¶ 27.  After receiving this initial admonition, Gaughan continued to disrupt neighboring inhabitants, this time a clinic worker, with his playing of the audio recording.  *Id*. ¶¶ 25-26.  As a result, the police issued a formal citation.  *Id*. ¶ 26.  Accordingly, Gaughan's claim that the City imposed restrictions on his speech in order to protect listeners from offensive speech is not well-taken.

Furthermore, the City did not forbid Gaughan from expressing his anti-abortion message.  Rather, the City imposed a reasonable restriction on the *manner* in which Gaughan conveyed his message to protect the privacy rights of unwilling listeners.  "[The U.S. Supreme Court has] repeatedly recognized the interests of unwilling listeners in situations where 'the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure.'"  *Hill v. Colorado,* 530 U.S. 703, 718 (2000).  Gaughan even admits that there were numerous occasions where he freely played the 911 audio recording near the abortion clinic.  *Am. Compl.* ¶¶ 16, 23.  Accordingly, the City did not enforce the ordinance based on the content or viewpoint of Gaughan's speech.  *Frye v. Kansas City Missouri Police Dep't,* 375 F.3d 785, 790 (8th Cir. 2004).

Gaughan states that he played the 911 audio recording on numerous occasions but was not arrested or issued a citation on any of these occasions even though Cleveland police

were in the vicinity of the abortion clinic and aware that he was playing the audio recording. The fact that the City did not enforce § 683.01(a) until a citizen complained does not support a claim of viewpoint discrimination.  Under the terms of the ordinance, a violation is measured by a demonstrated interference with a neighboring inhabitant's reasonable expectation of peace and quiet.  The City is not acting unlawfully by waiting for a neighboring inhabitant to complain before enforcing the ordinance.

Finally, the Sound Device Ordinances on their face do not grant private citizens the power to censor offensive speech or a disagreeable speaker:

> Under this [ordinance], absolutely no channel of communication is foreclosed. No speaker is silenced. And no message is prohibited. Petitioners are simply wrong when they assert that "[t]he [ordinance] . . . authorizes private citizens to deny [Plaintiffs' right] to engage in expressive activities." To the contrary, this statute does not provide for a "heckler's veto" but rather allows every speaker to engage freely in any expressive activity communicating all messages and viewpoints subject only to the narrow [manner] requirement imbedded within the . . . restriction.

*Hill,* 530 U.S. at 734.  Accordingly, the Sound Device Ordinances do not permit, and the City did not effectuate, a heckler's veto.

## IV.  CONCLUSION

For the reasons stated herein, Defendant the City of Cleveland's Motion to Dismiss  pursuant to Federal Rule of Civil Procedure 12(b)(6) **(ECF No. 5)** is **GRANTED** and the case is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster 11/29/2005*

**Dan Aaron Polster**
**United States District Judge**